419 A.2d 1368

**COMMONWEALTH of Pennsylvania**

v.

**Frank BARANYAI, Appellant.**

Superior Court of Pennsylvania.

Argued April 12, 1979.

Filed June 13, 1980.

Petition for Allowance of Appeal Granted March 13, 1981.

Bruce E. Dice, Pittsburgh, for appellant.

Kemal Mericli, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CERCONE, President Judge, and WIEAND and HOFFMAN, JJ.*

WIEAND, Judge:

Frank Baranyai, a policeman in the Borough of Millvale, Allegheny County, was tried by a jury and found guilty of one count of assault and another count of official oppression arising out of an incident with one David Stier. He was also found guilty on a general charge of official oppression involving numerous persons. He was acquitted of twenty–six other charges. Post trial motions were denied, and a sentence of probation was imposed. This appeal followed.

The facts, as set forth in the opinion filed by the court below, are as follows: "On March 25, 1977, David Stier,

* Judge DONALD E. WIEAND is sitting by special designation.

after having lunch and a few drinks with his business partner at the VIP Bar and Cousin's Lounge, went to his pickup truck. His partner had parked his truck so close behind Stier's truck that Stier was unable to get his truck out of the parking space. Stier put his truck in reverse, backed up, thereby bumping the truck behind him in an effort to move the other truck. The truck did not move and, instead, Stier's actions resulted in the spinning of his truck wheels, a screeching noise and a cloud of smoke. At this time defendant Baranyai, on his way home from work and still dressed in his uniform, came upon Mr. Stier and stopped. The defendant asked Stier what he was doing and Stier replied that he was trying to get out of the parking space. Baranyai got out of his car and went over to Stier asking him to get out and walk to the rear of his truck and back again. Stier complied at which time Baranyai told him to lean against the truck and spread out. Stier had his hands on the cab of the truck and tried to turn around three or four times in order to tell the officer that the truck behind Stier belonged to his partner, but each time Stier turned, the defendant pushed him back and told him to shut up. A handcuff was placed on Stier's right wrist and again he tried to turn around at which time Baranyai threw him to the ground. The officer sat on top of Stier and as the victim tried to raise himself up, the defendant put his hand around the victim's throat and three times hit his head against the pavement. The officer then took Stier's right elbow and pushed it toward the left shoulder to such a degree that an observer expected it to snap. Baranyai then called to a man sitting in the defendant's car and asked him to bring his nightstick which the man did. The defendant raised his nightstick and told the complainant to 'stop it or I'll split your head open.' (T.T. 51). Two other officers arrived on the scene, picked Stier up off the ground and placed him in their cruiser. Stier was charged with Drunk Driving and Resisting Arrest. His case was accepted for the Accelerated Rehabilitative Disposition Program.

"The general charge of Official Oppression listed fifteen individuals[1] who at various times over a period of years claimed that they had been oppressed by Officer Baranyai. The facts involved in each of those cases are too numerous to set forth here. Testimony was presented at trial in regard to all of the incidents. Generally, the complainants charged the defendant with mistreatment, harassment, false arrests and assaults."

Appellant has not questioned the sufficiency of the evidence to sustain the verdicts. He does raise many other issues, which we will consider seriatim.

■ He argues, first, that the trial court erred in refusing a mistrial because of prejudicial remarks allegedly made by the District Attorney during closing argument. This issue, however, has not been preserved for appellate review. Counsels' closing arguments were not recorded. Appellant interposed no objections during the District Attorney's closing argument and made no request to place on the record those remarks alleged to be objectionable. After the arguments had been concluded and during a conference between counsel and the trial judge in chambers, appellant for the first time complained of alleged prosecutorial overreaching and moved for a mistrial.

"Where the argument is not recorded, there is a need to require an objection during the argument so that the remarks may be placed in the record at or about the time they are made and thereby ensure accuracy. Otherwise, the recollection of both counsel and the court at the conclusion of the argument may differ and thereby result in unnecessary factual disputes." *Commonwealth v. Adkins*, 468 Pa. 465, 472, 364 A.2d 287, 291 (1976). See also: *Commonwealth v. Gilman*, 470 Pa. 179, 187, n.4, 368 A.2d 253, 256, n.4 (1977).

In the instant case, counsel failed to establish a record sufficient to permit an appellate court to make an intelligent judgment as to the nature of the District Attorney's re-

1. Our review of the information, as amended, discloses sixteen named persons alleged to be victims of appellant's official oppression.

marks, the context in which they were made, or their possible effect upon the jurors. *Commonwealth v. Banks*, 454 Pa. 401, 410, 311 A.2d 576, 580 (1973); *Commonwealth v. Kollock*, 246 Pa.Super. 16, 22–23, 369 A.2d 787, 790–91 (1977); *Commonwealth v. King*, 227 Pa.Super. 168, 172, 323 A.2d 260, 262 (1974).

In preparing a record for post trial proceedings, the parties elected not to transcribe the testimony of Assistant Attorney General Michael Louik. Consequently, we are unable to ascertain, as appellant urges us to do, that his testimony implied that appellant had been involved in additional offenses which had not been prosecuted.

■ Next, appellant argues that the trial court erred in denying a motion for mistrial after the testimony of a Commonwealth witness had varied from an offer of proof made by the District Attorney. The offer had been to show a threat made by appellant to a witness that the witness should "get out of my town" and that appellant would "get him" if he "testified or appeared in town again." The witness testified only that appellant had told him to stay out of town. The variance was harmless. This testimony was less damaging than that suggested by the offer, and it is difficult to understand in what manner appellant was prejudiced thereby. It did not require the granting of a mistrial.

■ A mistrial was also requested when the District Attorney asked appellant, on cross–examination, "Do you remember yourself telling Mr. Hersick [2] that 'if I'm found not guilty, I'm going to press charges against all the witnesses against me'?" The trial court ruled the question irrelevant, sustained a defense objection thereto and instructed the jury to disregard it. The motion for mistrial, however, was denied. The appellant argues that this was error.

There is no merit in this argument. It has been held that it is proper for the Commonwealth to show an attempt by a

2. Hersick was a prosecution witness.

defendant to intimidate its witnesses. See: *Commonwealth v. Kramer*, 247 Pa.Super. 1, 8, 371 A.2d 1008, 1011 (1977); *Commonwealth v. Petro*, 115 Pa.Super. 388, 394, 176 A. 46, 48 (1934). In the instant case, we need not decide whether the inquiry proposed by the prosecuting attorney was a bona fide attempt to show such intimidation, for the trial court sustained an objection thereto and instructed the jury to disregard the question. A mistrial, therefore, was not warranted.

■ Appellant argues that a mistrial should also have been declared because the trial judge, in response to a prosecution request that appellant give answers responsive to counsel's questions, said: "You two better get your act together or you're going to be in trouble with this court." A request for mistrial was made at the next recess. It is contended that the judge's remarks made it impossible thereafter for appellant to receive a fair and impartial trial. We disagree.

It has frequently been said that despite the fact that a trial judge must exhibit absolute impartiality in the conduct of a trial, "[e]very unwise or irrelevant remark made in the course of a trial . . . does not compel the granting of a new trial. A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. England*, 474 Pa. 1, 16–17, 375 A.2d 1292, 1300 (1977); *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973); *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957) (emphasis omitted).

In the instant case, after a review of the record, we are satisfied that the remark was an isolated occurrence, that there was no manifestation of bias in favor of the Commonwealth and no expression of opinion concerning the merits of the case or the credibility of appellant. The remark of the

trial judge, although better left unsaid, did not reach a level where appellant was deprived of a fair and impartial trial.

Appellant argues finally that the information charging official oppression against many persons during the summer of 1973 and various other dates was fatally defective.

The crime of official oppression is defined by 18 Pa.C.S. § 5301. It is there provided:

"A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:

(1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights; or

(2) denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity."

The information charging appellant with official oppression of many persons generally over a period of several months was as follows:

"The District Attorney of Allegheny County by this information charges that on (or about) summer of 1973 and various other dates in the said County of Allegheny Frank L. Baranyai hereinafter called actor, did commit the crime or crimes indicated herein; that is:

"The actor in his capacity as a public officer or employee; to wit, a police officer of the Borough of Millvale, knowing that his conduct was illegal, acted or purported to act in an official capacity or took advantage of such actual or purported capacity, and subjected another namely, Margaret Blume, Ronald Conway, Bernard Pietz, Jr., Daniel Burchill, Robert McQuaide, Andrew Tomaro, Erich Salac, Carl Abt, Shirley Wukits, Robert Lennartz, Franz Hersick, to mistreatment, harassment, arrests, and assaults while in the performance of his duties as a police officer of the Borough of Millvale, that is to say the actor beat, falsely arrested, and otherwise used his position as a police officer to harass the victims in violation of Section

5301(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. § 5301(1)."

■ The number of offenses charged by this information was impossible to determine. It included a charge of oppressing each of the named persons either collectively or individually at least once during the summer of 1973. Three days before the date for trial the court, over a defense objection, permitted the information to be amended by adding the names of additional persons whom the Commonwealth alleged to have been oppressed by acts of misconduct on the part of appellant.[3] By the time of trial, therefore, appellant had been charged in one count of the information with official oppression of sixteen persons by unspecified acts occurring on undesignated occasions. The evidence showed separate acts of alleged oppression and not a collective oppression of the named persons as a group. The trial court instructed the jury that to convict on this information it was necessary that appellant have oppressed only a sufficient number of the persons named therein to evidence an illegal scheme, plan or course of conduct. A determination of oppression with respect to each named person was not required by this instruction. The courtroom interpretation of the information created a new crime; one involving a series or collection of specific acts of official oppression. Such a crime is not to be found in the language of the Crimes Code.

The information is, or ought to be, "the star and compass of a criminal trial," and "must be a notification to the defendant of the charge he has to meet." *Commonwealth v. Petrillo*, 338 Pa. 65, 77, 12 A.2d 317, 324 (1940); *Commonwealth v. Lambert*, 226 Pa.Super. 41, 44, 313 A.2d 300, 301

3. This was in violation of Pa.R.Crim.P. 229 which provides: "The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, *provided the information as amended does not charge an additional or different offense.* Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice." (Emphasis added.)

(1973). It must be read in a common—sense manner and is not to be construed in an overly technical sense. *Common-wealth v. Pope*, 455 Pa. 384, 390, 317 A.2d 887, 890 (1974). It is mandatory that the accused be informed thereby of the crime with which he has been charged. *Commonwealth v. Lee*, 454 Pa. 526, 312 A.2d 391 (1973). Thus, it should contain "a plain and concise statement of the essential elements of the offense . . ." and "the date when the offense is alleged to have been committed . . . provided that if the precise date is not known or if the defense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient." Pa.R.Crim.P. 225(b).

"Two or more offenses . . . may be charged in the same information if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. *There shall be a separate count for each offense charged.*" Pa.R.Crim.P. 228(b) (emphasis added).

■ The information charging a general crime of officially oppressing many persons failed to comply with these requirements. The information, charging in one count the crime of oppressing sixteen persons during the summer of 1973, was fatally defective, and the conviction obtained thereon must be set aside.

■ Appellant also argues that his convictions for assaulting and officially oppressing Dave Stier are inconsistent with and barred on principles of collateral estoppel by Stier's conviction for driving while under the influence of intoxicating liquor and resisting arrest. This argument was considered at length by the trial court. We agree with the observations there made that Stier's acceptance into the Accelerated Rehabilitative Disposition Program did not constitute an adjudication of guilt. Moreover, the Common-

wealth and not appellant was the other party in that criminal action. Consequently, the disposition of the charges against Stier did not constitute a bar to appellant's present convictions.

The judgment of sentence for the crime of general official oppression is reversed and set aside, and appellant is discharged. The judgment of sentence on the charges of assaulting and officially oppressing Dave Stier is affirmed.

CERCONE, President Judge, files a concurring opinion.

CERCONE, President Judge, concurring:

While I join in the Majority Opinion in this case, there is a matter I wish to clarify. If the court in this case had charged the jury concerning individual acts of official oppression against Margaret Blume, et al., rather than charging on a pattern of official oppression, appellant's position would be more difficult. The ambiguities of the information may not have been assailable on appeal, because appellant did not file a bill of particulars seeking to have the Commonwealth specify the events to which this information referred.* Pa.R.Crim.P. 304; *Commonwealth v. Warren*, 475 Pa. 31, 379 A.2d 561 (1977). The issue in this case, however, involved the court's charging, and the jury's finding appellant guilty of a crime which the legislature has not created. It is hornbook law that courts do not have the jurisdiction to create criminal law. See, e. g., 21 Am.Jur.2d, Criminal Law, § 376 (1977). Since the question is jurisdictional, appellant's failure to file a bill of particulars or a motion to quash the information on the basis that it did not charge a statutory crime did not waive the question.

---

* Appellant filed a petition to sever for separate trial the information charging this court of official oppression. Appellant also filed a motion to reconsider quashing the indictment, but that was based upon an alleged violation of Crimes Code, 18 Pa.C.S. § 110 (1973) (statutory double jeopardy).