424 A.2d 897

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Stephen MITCHELL.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1979.

Filed Jan. 5, 1981.

456

Steven H. Goldblatt, Deputy District Attorney, Philadelphia, for Commonwealth, appellant.

Elaine DeMasse, Deputy Chief Public Defender, Leonard Sosnov, Assistant Defender, Philadelphia, for appellee.

Before HESTER, MONTGOMERY and CIRILLO, JJ.*

MONTGOMERY, Judge:

This case involves an appeal by the Commonwealth from an order granting the appellee's petition to dismiss pursuant to Pa.R.Crim.P. 1100. In order to address the Commonwealth's argument, we must set forth the procedural history of this case pertinent hereto.

Appellee, age seventeen, was arrested on February 4, 1978 and charged in a criminal complaint with a robbery and shooting which occurred on February 3, 1978 in Philadelphia.[1] On the same day, February 4, 1978, appellee was also arrested for a murder offense which likewise occurred on February 3, 1978.

When appellee was arrested for the robbery, the Commonwealth noted that he was in fact a juvenile. Apparently, the Commonwealth proceeded to initiate criminal proceedings against him in adult criminal court because he was being charged simultaneously with murder. A charge of homicide empowers the court to remove a juvenile from the jurisdiction of Juvenile Court.[2] However, although the murder occurred on the same day as the robbery, it was unrelated to the incident in question.

The Commonwealth realized the charges were separate one week later, and filed a delinquency petition on February 10, 1978, requesting that the robbery case be transferred to Juvenile Court for a hearing on whether appellee should be tried as an adult. On February 22, 1978, the case was so

* Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, is sitting by designation.

1. Appellee was charged with Robbery, Conspiracy, Simple and Aggravated Assault, Firearms Violations, Possessing Instruments of Crime, and Recklessly Endangering Another Person at Information Nos. 1809–1814.

2. See 42 Pa.C.S.A. § 6302, 42 Pa.C.S.A. § 6322, 42 Pa.C.S.A. § 6355. Prior to June 27, 1978, these statutes were cited at 11 P.S. § 50–102, § 50–303, and § 50–325.

transferred to Juvenile Court,[3] but as a result of numerous delays on both sides, the certification hearing was only held on May 22, 1978. At that time, the charges were certified for transfer to the criminal trial division of the Court of Common Pleas of Philadelphia County.

The disposition of appellee's case is a familiar story, replete with delays and continuances attributable to both sides.

On September 13, 1978, 218 days after the filing of the criminal complaint, appellee petitioned to dismiss pursuant to Rule 1100, contending that the time period within to commence trial had expired without appellee being brought to trial.[4] Appellee's petition to dismiss the robbery and related charges was granted by order of Court on October 4, 1978, as amended on October 10, 1978.[5]

The Commonwealth sought a Reconsideration of the Order of October 4, 1978 by petition filed October 30, 1978.[6] After argument, the order was affirmed and the Commonwealth's petition, denied. This appeal follows.

The central issue herein is whether the 180-day period commenced when the complaint was filed against appellee and included the time period during which appellee was subject to the jurisdiction of Juvenile Court. The Commonwealth concedes that if the running of Rule 1100 began on the date of the complaint, February 4, 1978 and continued uninterrupted, then a violation of appellee's right to a speedy trial clearly occurred. However, the Commonwealth

3. In accordance with the Juvenile Act, 42 Pa.C.S.A. § 6301, et seq. Prior to June 27, 1978, this act was cited at 11 P.S. § 50–101 et seq.

4. Appellee filed a companion Petition to Quash Informations, De-Certify, and Remand to Juvenile Court. This petition was denied at a hearing on September 27, 1978.

5. The lower court ruled that the 180-day period began with appellee's arrest, and the time appellee's case was in juvenile court could not be considered excludable under the strict terms of Rule 1100(d).

6. The Commonwealth failed to file a timely Petition for Extension of Time, although apparently it did file such a petition sometime in November, 1978.

contends that the transfer of this case to Juvenile Court on February 22, 1978, effectively terminated the charges and authority of the criminal court over appellee. That is, the transfer of Juvenile Court was tantamount to a dismissal of the proceedings instituted against the appellee. The Commonwealth argues that the subsequent certification of appellee to adult criminal court on May 22, 1978 was equivalent to the filing of new charges against him and that the 180-day period should begin to run from that date. While we reject the Commonwealth's strained interpretation of their actions, we do find that Rule 1100 does not apply to juvenile proceedings.

It is unquestionable that when the complaint was filed herein, Rule 1100 became effective and the time period to commence trial began to run. Pa.R.Crim.P. 1100(a)(2). *Commonwealth v. Mitchell*, 472 Pa. 553, 372 A.2d 826 (1977). However, when this case was transferred to Juvenile Court on February 22, 1978, it became subject to the exclusive jurisdiction of that court. Such action is demanded by the Juvenile Act; when it becomes apparent to the court that the defendant is a child,

> ". . . the court shall forthwith halt further criminal proceedings, and where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile proceedings." 42 Pa.C.S.A. § 6322.

At that point, Pa.R.Crim.P. 1(a) becomes germane, stating that "[u]nless otherwise specifically provided, these rules shall not apply to juvenile . . . proceedings." The Rules of Criminal Procedure have always been strictly construed by the Pennsylvania Supreme Court, *Commonwealth v. Brocklehurst*, 491 Pa. 151, 420 A.2d 385 (1980), *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975), *Commonwealth v. Wade*, 475 Pa. 399, 380 A.2d 782 (1977), *Commonwealth v. Mullen*, 460 Pa. 336, 333 A.2d 755 (1975), and when faced with a juvenile proceeding in *In re Geiger*, 454 Pa. 51, 309 A.2d 559 (1973), the Pennsylvania Supreme Court relied upon Pa.R.Crim.P. 1 in stating:

"We think it clear that the Criminal Rules apply until the point at which the powers of the Juvenile Court come into play under the Juvenile Court Law." 454 Pa. at 57, 309 A.2d at 563.

We must therefore conclude that once this case was transferred to Juvenile Court, the criminal proceedings were effectively suspended along with the applicability of the Rules of Criminal Procedure.

Appellee contends that by denying applicability of Rule 1100 to juvenile proceedings, we are effectively denying juveniles the constitutional right to a speedy trial. What appellee fails to recognize is that Rule 1100 is not synonymous with the aforementioned constitutional right. Rule 1100 is only ". . . an administrative method by which we seek to give substance to the constitutional guarantee of a speedy trial for criminal defendants." *Commonwealth v. Johnson*, 487 Pa. 197, 202, 409 A.2d 308, 310 (1979).

■ Furthermore, the United States Supreme Court has declared in *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), that a juvenile proceeding is not a criminal prosecution within the guarantees of the Federal Constitution. Juveniles, therefore, do not have an absolute right to all constitutional safeguards developed to protect those accused of crimes. The philosophy and purpose of Juvenile Court has always been to seek reformation of the youthful offender, not retribution, *In re Garman*, 250 Pa.Super. 54, 378 A.2d 449 (1977), therefore, the same degree of protection need not be accorded to juveniles.

That is not to say juveniles are not without any rights. The United States Supreme Court has decided that a juvenile has a right to notice of the charges, to counsel, to confrontation and cross-examination of witnesses, and to the privilege against self-incrimination. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). As of yet, the Supreme Court has remained silent with respect to whether juveniles have the right to speedy trials. However, general standards have been articulated by the Supreme Court when evaluat-

ing any alleged denial of a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ Assuming, arguendo, that a juvenile was afforded the right to a speedy trial, we would have to balance the length of delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant to determine if a speedy trial was denied. Under the facts of this case, we would be forced to conclude that appellee did not advance a valid speedy trial claim. The total period between arrest and discharge was eight months. A delay of three months must be attributed to appellee as the period during which he was afforded the protection of Juvenile Court and during which the Commonwealth had the burden of certification. The record fails to reflect a demand by appellee for trial. Finally, appellee does allege prejudice in that he was incarcerated for the entire eight-month period. However, appellee was concomitantly charged with murder and does not argue that his incarceration was solely attributable to the charges in the instant case. Therefore, the extent of the prejudice arising from this case is unknown. Since we find appellee's claim to be without merit, it is unnecessary for us to decide whether juveniles have a right to a speedy trial.

On May 22, 1978, appellee was certified back to criminal court. In a case involving similar circumstances, *Commonwealth v. Bell*, 245 Pa.Super. 164, 369 A.2d 345 (1976), affirmed, 481 Pa. 229, 392 A.2d 691 (1978), a delinquency petition was initially filed in Juvenile Court against a juvenile who was subsequently certified to criminal court. Therein, we ruled that the 180-day period only commenced when the case came within the powers of the criminal court, and hence within the ambit of the Rules of Criminal Procedure. This case supports our above finding that Rule 1100 was inapplicable to appellee while he was subject to Juvenile Court jurisdiction, and also mandates that Rule 1100 run from the day of certification.

Having concluded that Rule 1100 was activated as of May 22, 1978, we must resolve one last question: whether the initial time period between appellee's arrest and the transfer

to Juvenile Court should be counted toward the 180 days. The Pennsylvania Supreme Court has recently ruled that Rule 1100, once it starts running, can in certain instances be interrupted, only to continue running at a later date. In *Commonwealth v. Johnson*, 487 Pa. 197, 409 A.2d 308 (1979), the period between the filing of a viable complaint and the refusal of a Grand Jury to indict and the period following the indictment by a second Grand Jury and trial was added together in computing the 180-day period.

The Commonwealth urges us to hold that the 180-day period herein only be considered as starting on May 22, 1978. In support of its argument, the Commonwealth directs our attention to a line of cases wherein an initial complaint was filed and subsequently dismissed for various reasons, only to be refiled against the defendant at a later date. The 180-day period has been held to start only upon the filing of the second complaint. *Commonwealth v. Brocklehurst*, supra, *Commonwealth v. Braithwaite*, 253 Pa.Super. 447, 385 A.2d 423 (1978), *Commonwealth v. Mumich*, 239 Pa.Super. 209, 361 A.2d 359 (1976), *Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978), *Commonwealth v. Lowe*, 255 Pa.Super. 78, 386 A.2d 144 (1978), *Commonwealth v. Powell*, 257 Pa.Super. 522, 390 A.2d 1360 (1978), *Commonwealth v. Finfrock*, 257 Pa.Super. 555, 391 A.2d 621 (1978), and *Commonwealth v. Weitkamp*, 255 Pa.Super. 305, 386 A.2d 1014 (1978). The rationale for this line of authority is that after the initial complaint is dismissed, the accused is free from anxiety or concern accompanying public accusation, and the protection of Rule 1100 is thereafter unnecessary.

However, the above situations are inapposite to the one at hand. Unlike the cases cited infra wherein the complaints were dismissed or withdrawn, the complaint herein remained standing against the appellee. There was only one complaint filed in criminal court, and although it was effectively suspended while appellee was in Juvenile Court, it was unquestionably viable before appellee's removal to Juvenile Court, and after his return to criminal court.

During the eighteen days between his arrest and transfer to Juvenile Court, the appellee was subject to the

"disruption of employment, curtailment of associations, . . . to public obliquy, and the creation of anxiety," *Commonwealth v. Mitchell,* supra, 472 Pa. at 561, 372 A.2d at 830, which Rule 1100 attempts to limit. The Commonwealth could have dismissed or withdrawn the complaint after appellee was removed to juvenile court and reinstated legal proceedings against him when he was certified to adult court. However, they chose not to do so, and will now be charged with the days during which the complaint remained viable, exclusive of the time appellee was in juvenile court. Therefore, we hold that the periods during which this complaint existed shall be tacked to determine the amount of time which had passed under the speedy trial rule.

The period between appellee's arrest and transfer to juvenile court involved eighteen days, and the period from May 22, 1978, the day appellee was certified to criminal court, until the filing of appellee's Petition to Dismiss on September 13, 1978, was 114 days. Together, the amount of time applicable to the run period was 132 days. Therefore, appellee's petition was prematurely filed, and improperly granted.

Reversed and remanded for trial.